578 A.2d 530

Agnes HATFIELD and Herbert Hatfield, H/W, Appellants,

v.

CONTINENTAL IMPORTS, INC. and Martin Gross and M. Leonard Gross, Individually and Trading as Warehouse Imports and Talin Industria Arredmanti, S.P.A., Appellees.

Appeal of CONTINENTAL IMPORTS, INC., and Martin Gross and M. Leonard Gross, Individually and Trading as Warehouse Imports, Appellants.

Agnes HATFIELD and Herbert Hatfield, Her Husband, Appellants

v.

CONTINENTAL IMPORTS, INC. and Martin Gross and M. Leonard Gross, Individually and Trading as Warehouse Imports and Talin Industria Arredmanti, S.P.A.

Superior Court of Pennsylvania.

Argued May 1, 1990.

Filed Aug. 10, 1990.

Edward J. Marcantonia, Philadelphia, for appellant (at 132) and appellee (at 317).

James L. Womer, Jr., Philadelphia, for appellees (at 132) and appellants (at 317).

Raymond J. Quaglia, Philadelphia, for Talin, appellee.

Before DEL SOLE, JOHNSON and HOFFMAN, JJ.

DEL SOLE, Judge:

Following this court's grant of permission to take an interlocutory appeal, these appeals were filed challenging a trial court order which determined that it was appropriate for a settlement agreement to be brought into evidence at trial. We reverse.

This action was initiated by Agnes and Herbert Hatfield seeking to recover damages which were alleged to be a result of injuries Mrs. Hatfield sustained to her back following a fall from a chair which suddenly collapsed. The Hatfields set forth causes of action in negligence and products liability against Continental Imports Inc., and Marvin Gross and Leonard Gross individually and trading as Warehouse Imports (hereinafter called original defendants.). Original defendants subsequently joined as an additional defendant, Talin Industria Arredamenti, an Italian manufacturer, (hereinafter Talin).

The day before trial was scheduled to begin Talin presented a motion in limine to the court, seeking permission to introduce a settlement agreement and release into evidence. This agreement entered into between the Hatfields and the original defendants provided in part:

In addition to the foregoing, the plaintiffs also agree to pursue an action against Talin Industria Arredamenti. If the action against Talin Industria Arredamenti is successful the plaintiffs will return fifty-thousand ($50,000.00) dollars to releasees, free and clear of all fees and expenses except that releasors agree to pay 50% of the expenses of the litigation against Talin Industria Arredamenti, incurred after the signing of this release. If releasees are able to settle their claim against Talin prior to trial, they will return to the releasees twenty-five thousand ($25,000.00) dollars free and clear of all fees and expenses.

The trial court granted Talin's motion, ruling that the release would be admissible at trial. Subsequently, the Hatfields and the original defendants sought, and were granted, permission to appeal this interlocutory order.

Our sole concern in this appeal is the admissibility of the agreement and release. The trial court ruled that it was admissible, accepting Talin's argument that the release constituted a "Mary Carter Agreement". The term "Mary Carter Agreement" was made popular after a Florida decision in *Booth v. Mary Carter Paint Co.*, 202 So.2d 8 (Fla.App.1967). Such an agreement has certain classic features. They include a secret agreement which dictates that the defendant must remain in the action and will pay to the plaintiff a certain monetary recovery regardless of the outcome of the action and will have his or her own maximum liability diminished proportionately by increasing the liability of the other co-defendants. The trial court adopted the position taken in the later Florida case of *Ward v. Ochoa*, 284 So.2d 385 (Fla.1973), and found that such an agreement should be admitted into evidence by citing the following passage:

Secrecy is the essence of such an agreement because the court or jury as trier of the fact, if apprised of this, would likely weigh differently the testimony and conduct of the signing defendant as related to the non-signing defendant. *Ward v. Ochoa*, supra, at 387.

We decline to accept the position adopted by the trial court in this case. While the Appellants opine that the instant agreement is not a classic "Mary Carter Agreement" since the agreement was fully disclosed to the court, this jurisdiction has not considered or defined what is a "Mary Carter Agreement". We will not undertake such consideration here or determine the effect such an agreement would have on this action because we find this case to be controlled by 42 Pa.C.S.A. § 6141(c). This statute provides:

> **Admissibility in evidence.**—Except in an action in which final settlement and release has been pleaded as a complete defense, any settlement or payment referred to in subsections (a) [relating to personal injuries] and (b) [relating to damages to property] shall not be admissible in evidence on the trial of any matter.

This statute plainly states that settlements and releases shall not be disclosed to a jury. The only exception concerns a situation which is inapplicable here, where the settlement and release are pleaded as a complete defense. Although the settlement and release was not sought to be admitted as a complete defense to this action, the trial court believed a further exception should exist with respect to this settlement agreement which it found to be unduly prejudicial and biased against Talin. The trial court concluded that "in the interests of fairness and justice, to ensure that the jury fairly weighs the credibility of the witnesses, and properly determines liability, the jury must be apprised of the settlement agreement." This ruling was contrary to the express mandate of § 6141(c) which prohibits admission of such an agreement.

Exceptions to the rule announced in § 6141(c) have been considered by the courts of this Commonwealth and rejected. In *Weingrad v. Philadelphia Electric Co.*, 324 Pa.Super. 16, 471 A.2d 100 (1984), the Superior Court was ask to consider the propriety of a trial court's decision to disclose to the jury the fact that one of the defendants had settled with the plaintiff prior to trial. Citing to § 6141(c), this

court determined that the trial court erred in informing the jury of the settlement. In *Weingrad* the trial court ruled that evidence of the settlement was admissible by relying upon a Wisconsin decision, *Hareng v. Blanke,* 90 Wis.2d 158, 279 N.W.2d 437 (1979). The trial court found the *Hareng* decision persuasive since, as in *Hareng,* the settlement in effect "cause[d] a realignment of parties so that a settling defendant [became] an actual or potential ally of the plaintiff." In such a factual situation the trial court believed the settlement should be disclosed to the jury. *Weingrad v. Philadelphia Electric Co., supra,* 471 A.2d at 103 fnt. 3. On appeal, the *Weingrad* court remarked that in its opinion "the public policy of promoting settlements would not be frustrated by a law similar to that in Wisconsin, which permits the admission of evidence of settlements when offered to prove bias or prejudice of a witness." *Id.* However, the court noted that the Pennsylvania statute was "comparatively inflexible" and reversed the trial court's decision to admit the settlement into evidence.

The *Weingrad* decision was relied upon by a panel of this court in *Wilkerson v. Allied Van Lines,* 360 Pa.Super. 523, 521 A.2d 25 (1987). As in this case, the non-settling defendant in *Wilkerson* sought to create an exception to the provision of § 6141(c). It maintained "that the statute should be interpreted to create an exception where a settlement may be relevant to attack the credibility of testimony given by a settling party by showing bias, prejudice or interest." 521 A.2d at 30. The court rejected this claim and, referring to the "inflexibility" of the statute as recognized in the *Weingrad* decision, ruled that the trial court did not err when it refused to permit the jury to learn of the settlement.

Talin submits in this case that the settlement agreement and release entered into between the Hatfields and the original defendants differed from the settlement agreements at issue in the *Weingrad* and *Wilkerson* cases. Both the trial court and Talin believe that this agreement should be classified as a "Mary Carter Agreement". Because it

creates a "common interest in seeing that Talin, the non-settling defendant is found liable at trial", the trial court found that it "undermines the adversary nature and integrity of the proceedings."

The trial court's rationale is grounded on the premise that an agreement such as this should be viewed by the jury to enable them to weigh the credibility of the witnesses and their respective interests in the outcome of the cases. These precise arguments concerning bias, prejudice and interest have been rejected by the courts in *Weingrad* and *Wilkerson* as exceptions to the rule set forth at 42 Pa.C. S.A. § 6141(c).

We conclude the outcome of this decision is mandated by the language of 42 Pa.C.S.A. § 6141(c) and the cases which interpret it to be without further exceptions. Accordingly, we reverse the trial court's order which granted Talin's motion in limine to introduce into evidence the settlement agreement and release.