432 So.2d 132 (1983)
INSURANCE COMPANY OF NORTH AMERICA, a Foreign Corporation Doing Business in the State of Florida, Appellant,
v.
Ann SLOAN, Bechtel Jewelers, Inc., a Florida Corporation, Terence F. McCabe, Inc., a Foreign Corporation Doing Business in the State of Florida, and Hanover Insurance, a Foreign Corporation, Appellees.
No. 81-1316.
District Court of Appeal of Florida, Fourth District.
May 4, 1983.
Rehearing Denied June 20, 1983.
*133 Marjorie Gadarian Graham of Jones & Foster, P.A., West Palm Beach, for appellant.
Edna L. Caruso and Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellee Sloan.
Ronald Sales of Sales & Weissman, P.A., West Palm Beach, for appellee Bechtel.
Anne H. Ford of Brennan, McAliley, Hayskar, McAliley & Jefferson, P.A., West Palm Beach, for appellee Terrence F. McCabe, Inc.
LETTS, Chief Judge.
A defendant insurance company here attacks a trial judge's ruling admitting an entire Mary Carter agreement into evidence. It is urged upon us that the written agreement contained some highly prejudicial language. We agree and reverse.
In the case at bar, the first jeweler codefendant entrusted a customer's valuable sapphire ring to a second jeweler codefendant who during the entrustment caused it to be cleaned by an ultrasonic machine, during which process the ring was shattered. Needless to say the customer demanded redress and the instant suit against both jewelers, their insurance companies and later the manufacturer of the machine, ensued. Prior to trial, the customer and the second jeweler entered into a Mary Carter agreement the existence of which the defendants, not parties to the agreement, sought to make known to the jury. However, those latter defendants also sought to exclude or excise certain portions of the agreement which they claimed would arouse impermissible jury prejudice.
We will not waste time reiterating exactly what a Mary Carter agreement is and why it is important that the jury should be informed about it. For those few readers who wish to refresh their memories, we content ourselves by referring to the case of Frier's, Inc. v. Seaboard Coastline Railroad, 355 So.2d 208 (Fla. 1st DCA 1978), which contains a more than adequate explanation thereof.
Contained within the four corners of the particular Mary Carter agreement now before us is found in pertinent part the following language:
Since Hanover Insurance Company agrees that the "working on" exclusion does not apply and has now extended coverage for [the first jeweler].
... .
We have litigated this case over a period of one year and seven months and we both agree that the insurance carrier should have afforded Bechtel Jewelers, Inc. with a defense and agreed to pay the loss since it is not arguable that there is no exclusion from coverage. The insurance company has forced us to trial.
The parties to this agreement argue that they are not the ones who sought to introduce this document, but that if those defendants who were not parties to the agreement do want the jury to know of its existence, the complete document must be introduced in evidence. To support this all-or-nothing position, the Mary Carter participants primarily cite three cases, two from the Supreme Court and a third from this *134 court. See Ward v. Ochoa, 284 So.2d 385 (Fla. 1973), Maule Industries, Inc. v. Rountree, 284 So.2d 389 (Fla. 1973); and Swanson v. State Farm Fire & Casualty Co., 349 So.2d 202 (Fla. 4th DCA 1977).
Discussing the two Supreme Court cases first, it is true that both apparently contemplate introduction of the complete agreement. However, we do not perceive that those holdings forever mandate only complete Mary Carter agreements, no matter what their content, nor do the opinions provide any detail of the agreements there under discussion. For instance, suppose a Mary Carter agreement contained gratuitous and self-serving language to the effect that the participating parties were upstanding and virtuous while those not included were guilty charlatans engaged in skulduggery. Under such circumstance, we cannot believe that our Supreme Court would insist on an all-or-nothing approach. The basic safeguard envisaged is that jurors must be advised of the existence of such agreements so that they may assess the performance of any participating defendants, vis-a-vis the fellow participant plaintiff, in the light of an otherwise secret bargain affecting the outcome. This laudable objective, however, should not be subverted by the inclusion in the agreement of self-serving statements which in effect sandbag any luckless defendants excluded from that bargain.
By the same token, the agreement should not be modified or excised so as to distort its true meaning. Thus, although we did not detail it in our former opinion in Swanson v. State Farm, supra, it was such a resulting distortion that on that occasion controlled our conclusion and we did not intend to forever mandate an all-or-nothing approach to the placing in evidence of Mary Carter agreements.
Turning now to the language in the agreement before us, we perceive in the second paragraph quoted above the very evil to which we earlier referred. The contracting parties paint themselves as upstanding and virtuous, and denigrate the excluded insurance company by obvious allusion to recalcitrance. Breast beating between the plaintiff and the second jeweler to the effect that the excluded insurance company has forced them to trial and for over a year has failed to acknowledge coverage that is unarguably present, would in large part be inadmissible from the witness stand and is highly prejudicial. Indeed, the self-serving conclusion here that coverage is "not arguable" is in our view highly questionable. The applicable policy contained an exception if damage occurred while any jewelry was being "actually worked upon." The second jeweler, while cleaning the stone in an ultrasonic machine, was very arguably working on it even though the jury later found that he was not. Thus, while we cannot second guess the jury on its resolution of this question of fact, we can provide redress if there is a reasonable possibility that the jury was misled or prejudiced. We believe such may well have occurred in this case.
Our holding is not without its qualifications. We specifically do not restrict a trial judge to advising the jury only of the existence of a Mary Carter agreement and we recognize it may be admissible in its entirety. Nor do we hold that the judge can never excise parts of it, for the agreement may contain certain statements of fact which are clearly inadmissible. What we do decide, however, is that the jury may not receive offerings which baldly distort, denigrate or conclude questions of fact that usurp the very reason for the jury's presence in the first place.
A final qualification revolves around the holdings of our Supreme Court in Ward v. Ochoa, supra, and Maule Industries v. Rountree, supra, because as we noted earlier, both of those cases contemplated jury inspection of a complete Mary Carter agreement. Accordingly, while we are confident we are correct, it does not necessarily follow that the Supreme Court is in agreement. Moreover, the Ward v. Ochoa decision appears to suggest the possibility of severance as an aggrieved party's remedy. All this being so, and deeming the matter to be of great public importance, we hereby certify the following question to the Supreme Court:

*135 IF A MARY CARTER AGREEMENT IS ENTERED INTO AND NONPARTICIPATING DEFENDANTS REQUEST THAT THE JURY BE SO ADVISED, MUST THE ENTIRE AGREEMENT ALWAYS BE PUT IN EVIDENCE.
We find no merit in the other point on appeal.
REVERSED AND REMANDED FOR A NEW TRIAL.
DOWNEY, J., and GOLDMAN, MURRAY, Associate Judge, concur.