492 So.2d 1149 (1986)
TEN ASSOCIATES and Highlands Insurance Company, Appellants,
v.
Angela BRUNSON, Etc., et al., Appellees.
Nos. 85-1201, 85-1638.
District Court of Appeal of Florida, Third District.
August 12, 1986.
Joe N. Unger, Smathers & Thompson, Miami, for appellants.
Cooper, Wolfe & Bolotin and Marc Cooper, Kopplow & Flynn, Miami, for appellees.
Before SCHWARTZ, C.J., and BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
The appellants, Ten Associates and Highlands Insurance Company [Ten Associates], were sued by Angela Brunson and her parents after Brunson was sexually assaulted in a vacant apartment located in the same apartment complex in which she resided. The complex is owned by Ten Associates. Brunson contended at trial that Ten Associates was liable because it left the unrenovated apartments unlocked even though it knew prior criminal incidents had occurred in vacant apartments, and it hired only a few untrained security guards even though it knew the security measures provided were insufficient. The jury found (1) that Ten Associates was negligent, (2) that it breached an assumed duty to provide security, and (3) that it breached an implied warranty of habitability. The jury awarded Brunson both compensatory and punitive damages.
Ten Associates does not contest the jury's finding of liability and the compensatory damage award. The issue on this *1150 appeal is whether the evidence was sufficient to sustain an award of punitive damages. Ten Associates maintains that there was insufficient evidence to show that it was guilty of willful and wanton misconduct. Brunson answers that there was sufficient evidence to show Ten Associates was motivated solely by financial concerns and that the trial court was correct in determining that the jury could find, as it did, that Ten Associates was liable for punitive damages because of its willful indifference to the safety of its tenants. We agree with Ten Associates that, as a matter of law, the evidence was insufficient to support an award of punitive damages. For the reasons which follow, we conclude that the trial court erred in submitting the punitive damages issue to the jury, and, therefore, we reverse the punitive damages award.
The 300-unit complex owned by Ten Associates is located in a high crime area. At the time of the assault, Ten Associates had owned the apartment complex for thirteen months. During that period, more than sixty incidents at the complex were reported to the police. At trial, testimony focused upon security measures taken at the apartment complex.
When Ten Associates bought the complex, it hired a succession of private companies to provide security. After those arrangements did not work out, Ten Associates decided to set up its own security system. The system was overseen by the apartment complex manager who had some security experience. This arrangement had problems as well. The manager was continually hiring and firing security guards for not doing their jobs. None of the guards had any formal training in security. Though the guards worked for minimum wage, they each received the use of a rent-free apartment. At the time of the incident, three guards were on the payroll, and one guard was on duty. Shortly before the attack occurred, the on-duty security guard spoke to the assailant and ascertained that he was there as a guest of his cousin.
At the time Ten Associates purchased the complex, the apartments were in poor condition. Ten Associates began a building-by-building renovation. Once an apartment was in shape, it was either locked up or rented to a new tenant. Apartments which had not yet been renovated were not locked up. If the guards found people in the vacant apartments, they would either chase them out or call the police. The manager and the guards periodically nailed up vacant apartments. These apartments were frequently broken into again. The attack in this case occurred in one of the apartments which had not yet been renovated and which had not been locked or nailed up.
The question presented in this appeal is whether Ten Associates' conduct was so willful and wanton that a basis for punitive damages could be established. To support an award of punitive damages, more than gross negligence must be found. The negligence required to sustain a recovery for punitive damages is the same as that required to sustain a conviction for manslaughter. White Construction Co. v. Dupont, 455 So.2d 1026, 1028 (Fla. 1984); Carraway v. Revell, 116 So.2d 16, 20 (Fla. 1959); Diaz v. Sears, Roebuck & Co., 475 So.2d 932, 934-35 (Fla. 3d DCA 1985). That is, the negligence
must be of a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.
White Construction, 455 So.2d at 1029 (quoting and reaffirming its language in Carraway, 116 So.2d at 20 n. 12); Diaz, 475 So.2d at 935; Martin v. Young, 443 So.2d 293, 294 (Fla. 3d DCA 1983) (both cases quoting same language above). The *1151 evidence in this case does not rise to that level.
Florida courts have frequently reversed awards of punitive damages where negligence or gross negligence was shown but willful and wanton misconduct was lacking. In White Construction, a forty-ton loader with defective brakes struck and injured the plaintiff when it was driven at top speed. Both the driver and the company which owned the loader were aware of the fact that the brakes had not been working for some time. While this constituted negligence, the supreme court stated that it was not sufficient as a matter of law to support an award of punitive damages. Following White Construction, the supreme court next considered Como Oil Co. v. O'Loughlin, 466 So.2d 1061 (Fla. 1985). The evidence in Como Oil showed that a gas truck which was filling an underground storage tank was dirty, grimy, leaked, and lacked a safety device on the filler nozzle. The driver did not use a dip stick to measure the gas level in the underground tank before pumping gas and let 350 gallons of gas overflow because he was not watching the filling operation. The gas ignited, and the plaintiff working nearby was burned and thrown by the explosion. While the evidence established gross negligence, the supreme court stated that no view of the evidence supported an award of punitive damages.
In Gerber Children's Centers, Inc. v. Harris, 484 So.2d 91 (Fla. 5th DCA 1986), a child fell through a window at a child care center and was severely cut. The bottom of the window was only about a foot above the floor. Originally the window contained safety glass and was covered by a protective screen. Due to vandalism, the windowpane and the protective screen were broken. The screen was not replaced, and the safety glass was replaced with ordinary glass. Management, though warned by employees of the danger, relied on barriers  tables, rockers, etc.  placed in front of the window to keep children away. The Fifth District found that the negligence fell short of that which would be necessary to sustain a manslaughter conviction and stated that the conduct involved could not be considered more flagrant and reckless than the conduct involved in White Construction. Accord Lil' Champ Food Stores, Inc. v. Holton, 475 So.2d 726 (Fla. 1st DCA 1985), rev. denied, 484 So.2d 8 (Fla. 1986); Lambert v. Doe, 453 So.2d 844 (Fla. 1st DCA 1984); Orlando Executive Park, Inc. v. P.D.R., 402 So.2d 442 (Fla. 5th DCA), rev. denied, 411 So.2d 384 (Fla. 1981), aff'd sub nom. Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491 (Fla. 1983). Griffith v. Shamrock Village, 94 So.2d 854 (Fla. 1957), upon which Brunson relies, is distinguishable on its facts and, because of White Construction, is probably limited to those rare situations in which there is such an entire want of care that malice can be imputed to the actions of the defendant, thus supporting a punitive damage award. There is no showing of an entire want of care on the part of Ten Associates; hence, malice cannot be imputed to its actions. The result here is controlled by White Construction and Como Oil. See Como Oil, 466 So.2d at 1062 ("The required misconduct goes beyond gross negligence."); White Construction, 455 So.2d at 1028 ("something more than gross negligence is needed to justify the imposition of punitive damages"); Gerber Children's Centers, 484 So.2d at 92 ("The law in Florida in regard to punitive damages has evolved dramatically since Griffith... ."). But see Paterson v. Deeb, 472 So.2d 1210, 1221 (Fla. 1st DCA 1985) ("We find nothing in Como Oil ... and White Construction ... which suggests that the Supreme Court has overruled or otherwise limited the rule in [Griffith]."), revs. denied, 484 So.2d 8, 9 (Fla. 1986).[1]
*1152 In accord with White Construction and Como Oil, we find that, as a matter of law, the jury's award of punitive damages was improper. The evidence showed that Ten Associates was negligent. However, there was no showing of any willful and wanton misconduct by Ten Associates which would support the punitive damage award. Ten Associates did make an attempt to provide security and a security guard was on duty at the time of the incident.[2] Ten Associates also attempted, albeit unsuccessfully, to rectify the problems at the complex by focusing its efforts toward rehabilitation of the apartments. Although Ten Associates' security efforts were insufficient, its actions do not rise to the level of willful and wanton misconduct which would support a criminal manslaughter conviction. Accordingly, the award of punitive damages is
Reversed.
NOTES
[1] While we disagree with this statement of the First District, Paterson is not in conflict. It also involved a landlord-tenant relationship; however, not only are the facts distinguishable, but it dealt with the trial court's dismissal of the case for failure to state a cause of action. The First District stated that the complaint alleged sufficient facts so that punitive damages might be recoverable at trial.
[2] The fact that the guard had questioned the assailant and knew that he was properly on the premises as a guest indicates that the security provided was at least working to some extent.